UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY BUBEL,  Case No. 12-10616

       Plaintiff,  Sean F. Cox
v.  United States District Judge

COMMISSIONER OF SOCIAL SECURITY,  Michael Hluchaniuk
United States Magistrate Judge

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 13)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On February 13, 2012, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for supplemental security income benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 12, 13).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on April 29, 2008, alleging that he became

unable to work on March 29, 2008.  (Dkt. 8-2, Pg ID 37).  The claim was initially

disapproved by the Commissioner on January 2, 2009. (Dkt. 8-2, Pg ID 37).

Plaintiff requested a hearing and on March 24, 2011, plaintiff appeared with

counsel before Administrative Law Judge (ALJ) T. Patrick Hannon, who

considered the case *de novo*.   In a decision dated June 9, 2011, the ALJ found that

plaintiff was not disabled.  (Dkt. 8-2, Pg ID 37-44).  On July 21, 20011, plaintiff

requested a review of this decision.  (Dkt. 8-2, Pg ID 33).  The ALJ's decision

became the final decision of the Commissioner when, after the review of additional

exhibits,[1] the Appeals Council, on December 15, 2011, denied plaintiff's request

for review.  (Dkt. 8-2, Pg ID 27-29); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

543-44 (6th Cir. 2004).

       For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings.

_____

       [1] In this circuit, where the Appeals Council considers additional evidence but denies a
request to review the ALJ's decision, since it has been held that the record is closed at the
administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not
part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th
Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since
district court review of the administrative record is limited to the ALJ's decision, which is the
final decision of the Commissioner, the court can consider only that evidence presented to the
ALJ. In other words, Appeals Council evidence may not be considered for the purpose of
substantial evidence review.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 46 years of age on the alleged disability onset date.  Plaintiff has past relevant work history as a truck driver.  (Dkt. 8-2, Pg ID 43).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since April 29, 2008, the disability application date.  (Dkt. 8-2, Pg ID 39).  At step two, the ALJ found that plaintiff's short term memory loss and drug and alcohol abuse were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id*.  At step four, the ALJ found plaintiff has the residual functional capacity to perform a full range of medium work.  (Dkt. 8-2, Pg ID 40). The ALJ did not reach step 5, given his step 4 conclusion.

### B.   Plaintiff's Claims of Error

Plaintiff first claims that the ALJ did not account for the severe impairment of short-term memory loss or moderate difficulties in concentration, persistence or pace in formulating the RFC.  According to plaintiff, the ALJ provides little insight into his exclusion of limitations caused by plaintiff's short-term memory loss from the RFC determination.  Plaintiff contends that the only reasoning given by the ALJ is purely speculative: "the claimant's short-term memory loss appears to be

attributed to his alcohol and drug abuse." (Tr. 18). Although the ALJ gives an "alternative" scenario, where he opines "were his short term memory loss not related to this alcohol and drug abuse, the fact that he is able to continue his activities of daily living, including driving and running errands, proves that memory loss is not precluding him from attaining gainful employment, even as a truck driver, which is his past relevant work." (Tr. 18). Plaintiff contends, therefore, that the reasoning provided by the ALJ for such a conclusion cannot be viewed as substantial evidence.

The plaintiff finds fault with the ALJ's decision to give "great weight" to a Mental Residual Functional Capacity Assessment completed by Sheila C. Williams-White on December 30, 2008.[2] According to plaintiff, Dr. Williams-White speculates that "[t]he ADLS are not significantly limited due to the memory problems as the claimant is able to cook, drive, do chores and laundry independently. He visits with friends and is able to take care of his personal needs. He is able to follow directions. The claimant does admit to drinking heavily, which probably impacts his memory as well." (Tr. 447). According to plaintiff, Dr. Williams-White does not support her opinion from any actual evidence from

---

[2] Plaintiff initially argued that he could not confirm that Dr. Williams-White was a medical professional and thus, her opinion was entitled to no weight. However, the Commissioner points out, it is clear from the Disability Determination and Transmittal that Dr. Williams-White holds a Ph.D. and is a specialist in category "38," which designates a psychology specialty. (Dkt. 8-3, Pg ID 79). Thus, this no longer appears to be an issue.

the administrative record, which notably, would have been limited to any

documents submitted prior to December 30, 2008.  (Tr. 447).

In contradiction to the ALJ's conclusion, the treating neurosurgeon, Dr.

Veyna, stated that plaintiff suffered from brain damage as a result of a

subarachnoid hemorrhage.  (Tr. 418).  Specifically, Dr. Veyna noted cognitive

deficits including short-term memory problems.  (Tr. 418).  Additionally, a

consultative doctor examined plaintiff on December 23, 2008.  Dr. Barrett's notes

describe difficulties with recent memory.  (Tr. 441).  Plaintiff also tested in the

ninth percentile, fifth percentile, and fourth percentile for Auditory Immediate

Memory, Visual Immediate Memory, and Immediate Memory on the Wechsler

Memory Scale - III.  (Tr. 442).  Plaintiff also contends that the "additional

information" provided by Dr. Barrett is in direct contradiction to plaintiff's scores

on testing.  Dr. Barrett described Jerry's "delayed memory" as "mild," and his

short-term memory falling within the "average range."  (Tr. 443).  Plaintiff's

Wechsler Memory Scale scores clearly reflect greater limitations in plaintiff's

immediate or short-term memory than that of his delayed memory; however, Dr.

Barrett's comments do not reflect or explain this discrepancy.  Therefore, the

ALJ's reliance on solely the consulting doctor's additional comments, rather than

the entire report was in error.

Plaintiff also contends that the ALJ did not evaluate or weigh the treating

Report and Recommendation
Cross-Motions for Summary Judgment
*Bubel v. Comm'r*; Case No. 12-10606

source opinions of Dr. Veyna, his treating neurosurgeon and did not provide good reasons for rejecting Dr. Veyna's opinion. Instead, the ALJ provided a summary of the statements made by Dr. Veyna with regard to plaintiff's short-term memory limitations and opinion that his patient was disabled. (Tr. 16). The ALJ also provided a superficial summary of Dr. Veyna's May 28, 2009 medical source statement. (Tr. 16-17). The only statement given any actual weight by the ALJ was that of Dr. Veyna's statement on October 29, 2008, that he supported his patient's claim for disability due to "subarachnoid hemorrhage and cognitive deficits." (Tr. 428). According to plaintiff, the ALJ provided no evaluation or weight for Dr. Veyna's May 28, 2009 medical source statement. (Tr. 463-464). Specifically, Dr. Veyna stated that his patient suffered from memory and cognitive problems with impulsiveness and decreased attention span caused by a brain injury from a ruptured aneurysm. (Tr. 463). Dr. Veyna opined that as a result, plaintiff was limited with regard to comprehension, memory, sustained concentration, and social interaction. (Tr. 464). Dr. Veyna also opined that due to his patient's ruptured aneurysm, he should never lift 50 pounds or more. According to plaintiff, the ALJ did not account for these findings in the RFC determination, and therefore did not provide controlling or great weight to Dr. Veyna's opinion. And, according to plaintiff, the ALJ did not provide any reasoning or justification for rejecting Dr. Veyna's opinion altogether, specifically

his May 28, 2009 opinion.  Instead of giving deference to the opinions of the plaintiff's treating neurosurgeon, the ALJ clearly rejected Dr. Veyna's opinions and relied on the opinions of Dr. Barrett and Williams-White.  As previously stated, Dr. Barrett was a consulting doctor who saw plaintiff on one occasion and provided contradictory statements with his own findings on testing.  According to plaintiff, Williams-White provided a non-medical opinion in an area which she was not an expert and her opinion was in part based on the contradictory findings of Dr. Barrett and was limited to an administrative record only through the date of her report, December 30, 2008.

The ALJ concluded that plaintiff could perform his "past relevant work as a truck driver" as it was "actually performed."  (Tr. 17).  According to plaintiff, he met his burden and the RFC determination provided by the ALJ excludes plaintiff's past work as a "truck driver."  The only information in the administrative record concerning plaintiff's past work as it was actually performed is contained in the Disability Report.  (Tr. 101).  On this form, plaintiff stated that he had past work as a "truck driver" and a "mechanic/tow truck driver."  (Tr. 101).  With respect to the "truck driver" position, plaintiff stated that he performed the job for 10 hours per day and was required to frequently lift objects weighing 50 pounds or more.  (Tr. 101).  The ALJ determined that due to all of plaintiff's limitations, his Residual Functional Capacity was limited to "medium" exertional

work.  As the only evidence in the record established that plaintiff performed his

past work as a "truck driver" above the medium exertional level, plaintiff contends

that substantial evidence does not support the ALJ's conclusion that plaintiff, who

is limited to medium exertional work, could perform his past relevant work as it

was actually performed.  Moreover, the vocational witness' brief testimony does

not cure this error.  The vocational witness testified that plaintiff's past relevant

work as a "truck driver" was medium exertional work with an SVP8 of one.  (Tr.

50).  The vocational witness did not state as to what his testimony was based on;

whether the testimony was based upon the truck driving position as plaintiff

performed it, based on information contained in the Dictionary of Occupational

Titles, or based upon other sources.  Plaintiff also argues that the ALJ failed to

meet the inquiry requirement of SSR 00-4p, as he did not inquire on the record as

the vocational witness testimony's consistency with the Dictionary of Occupational

Titles.  This error is not harmless because the vocational witness testified that

plaintiff's past work as a "truck driver" was performed at an SVP level of "one."

(Tr. 50).  As the only information provided to the vocational witness regarding

plaintiff's past work was the Disability Report, the witness would not have had

enough information about plaintiff's past work to make a determination as to the

SVP level of the job as it was actually performed. Moreover, a review of the

Dictionary of Occupational Titles yields the finding that there are no entries

entitled "truck driver" with an SVP of one.  Therefore, either the witness'

testimony was speculation, was erroneous and given in error, or his testimony was

based on a source inconsistent with the Dictionary of Occupational Titles.  As the

ALJ did not question the vocational witness as to the source of his testimony, this

Court cannot conduct adequate review of the ALJ's decision, which relied upon the

vocational witness' testimony.  Regardless of the vocational witness' testimony,

the ALJ determined that plaintiff could perform his past work as it was "actually

performed," and not as it is generally performed.  (Tr. 17).  As such a conclusion is

not supported by substantial evidence, this case should be remanded for further

adjudication pursuant to Sentence Four.

 Finally, although the ALJ determined that the Plaintiff was "not credible,"

he failed to fully evaluate the required factors. Specifically, with regard to

activities of daily living, the ALJ repeatedly alleged that plaintiff was able to cook,

drive, do chores and laundry independently, visit with friends, and care for his

personal needs.  (Tr. 16-17).  However, the ALJ failed to take into account that

following plaintiff's ruptured aneurysm, he moved in with his parents for

assistance in almost all activities of daily living.  (Tr. 46).  Plaintiff testified that

while with his parents, his parents completed all household duties for him.  (Tr.

47).  Additionally, plaintiff testified that he could not "stay focused on pretty much

anything for any amount of time," during this time.  (Tr. 47).  Moreover, the ALJ

did not consider that plaintiff did not have health insurance during this time and that no medication would have helped plaintiff as he was diagnosed as having brain damage by his neurosurgeon. (Tr. 418). Moreover, as far as the ALJ's concern regarding plaintiff's alcohol use, plaintiff testified that while living with his parents, he was not drinking. He also testified that he was not doing any driving while living with his parents and that he went over a year without driving. (Tr. 49). This is in clear contradiction to the ALJ's assumption that plaintiff's drinking could have caused his short-term memory deficits. Additionally, the fact that plaintiff was not driving for over a year following his ruptured aneurysm is inconsistent with the ALJ's finding that "The fact that he is able to continue his activities of daily living, including driving and running errands, proves that the memory loss is not precluding him from attaining gainful employment, even as a truck driver." (Tr. 18). The ALJ failed to consider the evidence that plaintiff needed the assistance of his parents on a day to day basis following his ruptured aneurysm, that he needed this assistance for over a year, and that during this time he was not driving or drinking. As such, plaintiff contends that the "superficial" credibility determination made by the ALJ is inconsistent with the evidence of record and not supported by substantial evidence, and this case should be remanded for further adjudication pursuant to Sentence Four.

C.     The Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ provided a well-reasoned

explanation for rejecting this opinion, and articulated internal inconsistencies in

Dr. Veyna's progress notes, that did nothing to support his May 2009 opinion.  In

May 2009, Dr. Veyna opined that plaintiff had some memory and cognitive

difficulties such as reduced attention span that were not expected to last more than

90 days.  (Tr. 464).  The ALJ contrasted that report with Dr. Veyna's progress

notes, which in June 2008, indicated that plaintiff was doing well neurologically

and functioning at nearly 100%, except for some memory difficulty.  (Tr. 16, 420).

Moreover, the ALJ cited Dr. Veyna's October 2008 notes, which indicated that

plaintiff continued to function well except for some memory issues, and Dr. Veyna

specifically opined that plaintiff's only restriction was related to short-term

memory loss.  (Tr. 16, 418).  Further, the ALJ pointed to Dr. Veyna's change of

heart in October 2009, when he noted that plaintiff no longer had any memory

issues, his headaches had resolved, and that he was basically resuming normal

life."  (Tr. 468).  On examination, plaintiff was alert, awake and appropriate, and

exhibited clear, fluent speech (Tr. 468).  He had no other neurological issues.  (Tr.

468).  Dr. Veyna opined that plaintiff was no longer disabled as of that date and

could resume normal life, given his issues had all resolved.  (Tr. 468).

Additionally, the ALJ referred to the consultative examiner, Dr. Barrett's

December 2008 opinion, in which he noted some mild memory deficits but also found that plaintiff had a period of alcohol and opiate dependence that was now in partial remission. (Tr. 439-44). Dr. Barrett concluded that plaintiff had average intellectual functioning, average short-term memory, and no significant mental functional restrictions. (Tr. 444). Contrary to plaintiff's arguments, the Commissioner contends that it was entirely appropriate and reasonable for the ALJ to accord greater weight to Dr. Barrett's opinion. The Commissioner also points out that it was perfectly appropriate for the ALJ to weigh Dr. Williams-White's opinion because reviewing medical source opinions must be evaluated like all other medical opinions. Further, the ALJ considered the other evidence in the record, noting that plaintiff maintained a diverse range of daily activities that included visiting his parents, running errands, driving, taking care of his personal needs, managing household chores, doing laundry, and cooking. (Tr. 16, 145-50). According to the Commissioner, this evidence clearly undercut Dr. Veyna's May 2009 opinion that plaintiff's memory issues caused several mental limitations.

According to the Commissioner, the medical opinions supported the ALJ's finding that plaintiff's short-term memory issues did not result in significant limitations in concentration. Dr. Barrett concluded that plaintiff had average intellectual functioning, average short-term memory, and no significant mental functional restrictions. (Tr. 444). Dr. Williams-White opined that plaintiff had

mild deficits in memory, but notwithstanding those deficits, his activities of daily living were not significantly limited.  (Tr. 447).  The Commissioner also points out that plaintiff's own reports indicated that he was able to pay attention for "quite awhile" and could follow written and spoken instructions "fine."  (Tr. 116).  This evidence further undercuts his claims of significant concentration deficits. Finally, the ALJ noted that plaintiff had a history of alcohol and substance abuse that was now in partial remission, but affected his memory to some extent during the relevant period.  (Tr. 16-18).  In particular, the ALJ noted that plaintiff was drinking heavily for a period of time in 2008 (6 to 12 beers a day), which according to Dr. Williams-White, impacted his memory to some degree, but not in a significantly disabling way.  (Tr. 16, 461).  The ALJ noted that he had also used crack cocaine as recently as March 2008.  (Tr. 13, 43).  The evidence of record indicates that, by 2009, plaintiff was no longer drinking or abusing substances, and his memory issues had all resolved, according to Dr. Veyna.  (Tr. 468).  According to the Commissioner, an ALJ may consider the evidence of plaintiff's improved condition during a period of sobriety.  *Bartley v. Barnhart*, 2004 WL 2940845, 117 Fed.Appx. 993, 997-98 (6th Cir. 2004).

According to the Commissioner, despite the minimal amount of medical evidence referencing concentration concerns, the ALJ gave plaintiff the benefit of the doubt and reasonably determined that plaintiff had moderate difficulties in

maintaining concentration, persistence or pace. (Tr. 14). Translating that rating into functional limitations, the ALJ concluded that plaintiff could nonetheless perform medium work. (Tr. 13). Substantial evidence supports the ALJ's finding that there were no specific concentration limitations supported by the record evidence, and therefore, his decision not to include such a limitation in the RFC finding was reasonable.

As to plaintiff's credibility, the Commissioner urges the Court to reject plaintiff's claim that the ALJ erred in relying on the evidence of his daily activities, and evidence of his prior drinking and drug use, which he claims was not going on during his surgical recovery, when he lived with his parents. Plaintiff's own reports, moreover, refute his claims that he was unable to perform activities during his recovery. Specifically, he reported a diverse range of activities to Dr. Barrett in December 2008, when he was living with his parents, noting that he was capable of cooking, cleaning, shopping, and doing laundry, but that he only occasionally performed these tasks because his mother did them for him. (Tr. 440). Plaintiff reported that he instead went out with friends for a few beers and visited socially. (Tr. 440). He also cut the lawn with a riding mower during this time. (Tr. 440). At no point in Dr. Barrett's report did plaintiff claim (as he did later in his testimony) that he could not perform any daily activities due to physical weakness or balance deficits. (Tr. 48, 439-40). Moreover, plaintiff's

14

claims of not driving for a year during his surgical recovery are belied by the treatment notes. Dr. Veyna's June 2008 progress notes indicate that plaintiff was recovering at home and already doing some driving, running errands in his truck. (Tr. 475). This was only three months after his surgery. According to the Commissioner, plaintiff's description of his drug and alcohol history is inaccurate. He told Dr. Barrett that he had most recently consumed alcohol one day before his appointment in December 2008, and he was still living with his parents at that time. (Tr. 439). Plaintiff had used crack cocaine as recently as March 2008, and claimed that using it landed him in the hospital. (Tr. 438-39). Thus, the Commissioner contends that it was entirely reasonable for the ALJ to consider the evidence of his drug and alcohol consumption when assessing plaintiff's credibility. *See Thompson v. Comm'r of Social Security*, 2012 WL 1340443 at *17 (E.D. Mich. 2012) (ALJ did not err in considering inconsistencies in the claimant's testimony about her use of alcohol or street drugs, when assessing credibility).

According to the Commissioner, plaintiff's argument regarding the vocational testimony overlooks the fact that the VE was describing the job as plaintiff performed it, based on plaintiff's descriptions of the work he performed (Tr. 101). Under similar facts, the Sixth Circuit has clarified that an alleged conflict between DOT descriptions and the VE testimony is not at issue. *See Kyle v. Comm'r of Social Security*, 609 F.3d 847, 853, n. 9 (6th Cir. 2010) ("The type of

conflict [SSR 00–4p] anticipates is not between the type of job claimant performed in the past and that which the VE opines [her] skills can transfer to in the future, but a conflict between the type of jobs the claimant has been determined by [a] VE to be able to perform and the DOT job description of the capabilities and skills required to do the job.").  Moreover, any omission on the ALJ's part to ask about apparent conflicts with the DOT was harmless, given that such conflicts were not at issue here.  *See Medendorp v. Comm'r of Social Security*, 2012 WL 991625 at *2 (W.D. Mich. 2012) (finding harmless error in ALJ's failure to ask about apparent conflicts with the DOT, because VE testified as to claimant's past work as she actually performed it).

D.    Plaintiff's Reply

According to plaintiff, the question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical questioning that suitably accommodated plaintiff's concentration limitations, given that not only did Dr. Veyna, plaintiff's treating neurosurgeon, opine that plaintiff's brain damage from a ruptured aneurysm limited plaintiff's comprehension, memory, sustained concentration, and social interaction, Dr. Barrett also indicated that plaintiff had deficits in delayed memory.  (Tr. 443, 464).  Plaintiff contends that the ALJ in no way accounted for plaintiff's concentration impairment, which manifested in short-term memory loss, in the hypothetical questioning or RFC determination, the

ALJ's decision is not supported by substantial evidence.

Plaintiff maintains that defendant's position that the ALJ properly rejected the treating source's medical opinion fails to consider that "a finding that a treating source medical opinion ... is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v Commissioner*, 581 F.3d 399, 408 (6th Cir. 2009). The treating source opinion is still entitled to deference. *Id*. In the present case, plaintiff argues that the ALJ provided no reasoning or evaluation for the rejection of Dr. Veyna's treating source statement. Moreover, the ALJ contradicts his own findings, stating that he had considered a "closed" period of benefits based on Dr. Veyna's findings, but after a review of the primary care doctor records, the ALJ determined that there "is nothing to prove a diminished residual functional capacity that lasted at least a year since the alleged onset date." (Tr. 16). Plaintiff points out that his primary doctor did not treat him for his memory deficits from his brain injury. Thus, the lack of treatment for his memory deficits with his primary doctor, when he saw a specialist for this condition, is not substantial evidence which supports the complete rejection of the treating source opinion of Dr. Veyna. Moreover, Dr. Veyna's May 2009 opinion is more than one year after the alleged onset date of April 29, 2008, which was one month after plaintiff suffered his subarachnoid

Report and Recommendation
Cross-Motions for Summary Judgment
*Bubel v. Comm'r*; Case No. 12-10606

hemorrhage which caused the brain damage, resulting in plaintiff's memory loss. (Tr. 427, 464). Thus, at a minimum, plaintiff contends that the ALJ should have provided deference to Dr. Veyna's statement for nearly 14 months of confirmed memory deficits. According to plaintiff, the ALJ provided no explanation for rejecting Dr. Veyna's medical opinion for the time period of April 29, 2008 through May 28, 2009. As such, substantial evidence does not support the Commissioner's decision as he did not provide "good reasons" for rejecting Dr. Veyna's treating source statement, specifically with regard to the aforementioned time period.[3]

According to plaintiff, since defendant concedes that the VE's testimony was based solely on the information provided by plaintiff, this Court need not make a determination as to the consistency of the VE's testimony with the DOT. The only issue remaining is whether substantial evidence supports the ALJ's finding that plaintiff could perform his past relevant work as a "truck driver" where plaintiff performed the past work by frequently lifting "50 lbs. or more," but the ALJ determined plaintiff had the Residual Functional Capacity to lift no more than 50 pounds at any time. (Tr. 14 citing 20 CFR 416.967(c), and Tr. 101). Plaintiff contends that the ALJ's decision is not supported by substantial evidence as

---

[3] The undersigned interprets plaintiff's argument as conceding that his claim is only for this closed period of time.

Report and Recommendation
Cross-Motions for Summary Judgment
*Bubel v. Comm'r*; Case No. 12-10606

plaintiff's past relevant work required him to frequently lift over 50 pounds and the ALJ determined that the most that plaintiff could lift was no more than 50 pounds, and even then, only occasionally, which defendant does not dispute.  (Tr. 14).  Thus, this case must be remanded pursuant to sentence four because the ALJ's decision is not supported by substantial evidence and the ALJ improperly terminated the sequential evaluation process at the fourth step.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

      C.    <u>Analysis and Conclusions</u>

          1.    Treating Physician/Mental Impairment

In this case, the analysis of the ALJ's weighing of plaintiff's treating

physician opinions and the assessment of his mental impairment go hand in hand.

As both parties acknowledge, greater deference is generally given to the opinions

of treating medical sources than to the opinions of non-treating medical sources.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007).  "Closely

associated with the treating physician rule, the regulations require the ALJ to

'always give good reasons in [the] notice of determination or decision for the

weight' given to the claimant's treating source's opinion."  *Id*. at 406, citing § 404

.1527(d)(2).  Indeed, SSR 82-62 requires that "[t]he explanation of the decision

must describe the weight attributed the pertinent medical and non-medical factors

in the case and reconcile any significant inconsistencies. Reasonable inferences

may be drawn, but presumptions, speculations and suppositions must not be used."

In this case, the ALJ rejects Dr. Veyna's opinion regarding plaintiff's

mental/memory impairments because his "support [of plaintiff's disability] is at

odds with his original findings and therefore, the undersigned accords very little

weight to Dr. Veyna's"  (Dkt. 8-2, Pg ID 42).  The "original findings" of Dr.

Veyna – cited throughout his office notes – are that plaintiff had short term

memory loss based on brain damage from his aneurism through October, 2009.

Obviously, Dr. Veyna believed that, at a minimum, plaintiff could not function as a

commercial truck driver (which the undersigned notes is very different from the

"running errands" that plaintiff was admittedly capable of doing) with this type of

memory impairment in this time frame.  The undersigned does not see why such

observations are inconsistent with Dr. Veyna's opinions and the ALJ does not

adequately explain this line of reasoning.  Moreover, while Dr. Barrett opined in

December, 2008 that plaintiff had mild deficits in delayed memory, he did not have

the benefit of Dr. Veyna's treatment records after this date, which is a significant

portion of the period at issue.  In addition, Dr. Williams-White concluded that

plaintiff could do "simple work" and that his ability to maintain attention and

concentration for extended periods was moderately limited.  (Dkt. 8-9, Pg ID 478-

479).  This opinion appears consistent with Dr. Veyna's opinion and there is no

evidence in the record suggesting that being a commercial truck driver is "simple

work."  In addition to not properly weighing Dr. Veyna's opinions, the ALJ did not

explain how his finding that plaintiff had a moderate impairment in concentration

persistence or pace, which is supported to a great extent by the consulting opinions,

affects his ability to perform the duties of a commercial truck driver.

Moreover, if the ALJ determined that Dr. Veyna's opinion should not be

given controlling weight despite the medical evidence in support, "the ALJ must

still determine how much weight is appropriate by considering a number of factors,

including the length of the treatment relationship, supportability of the opinion,

consistency of the opinion with the record as a whole, and any specialization of the

treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir.

2009).  This was not done either.  And, even if Dr. Veyna's opinion was not

entitled to controlling weight, it was entitled to deference. 20 C.F.R.

§ 404.1527(d)(2)(i).  As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion is
> not entitled to "controlling weight," not that the opinion
> should be rejected. Treating source medical opinions are
> still entitled to deference and must be weighed using all
> of the factors provided in 20 CFR 404.1527 and 416.927.
> In many cases, a treating source's medical opinion will be
> entitled to the greatest weight and should be adopted,
> even if it does not meet the test for controlling weight.

The ALJ failed to adequately address why Dr. Veyna's opinion should not be given

controlling weight or even deference, as required by the regulations. 20 C.F.R.

§ 404.1527(d)(2).  In addition, the undersigned finds the ALJ's analysis of

purported "inconsistencies" between Dr. Veyna's opinions and his office notes to

be wholly unsatisfactory, as discussed above.

As to the remaining justifications offered by the ALJ, the undersigned notes that "the courts may not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, *6 (6th Cir. 1993) (unpublished opinion), quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,463 U.S. 29, 50 (1983) (citation omitted).  "Courts are not at liberty to speculate on the basis of an administrative agency's order ... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'" *Hyatt Corp. v. N.L.R.B.*, 929 F.2d 361, 367 (6th Cir. 1991).  Thus, the Commissioner's *post hoc* rationalization is not an acceptable substitute for the ALJ's lack of rationale concerning his omissions in considering the opinion of plaintiff's treating physician.  This matter should be remanded for the ALJ to further explain the weight given plaintiff's treating physician opinions and how his moderate impairment in concentration, persistence, or pace was accounted for in either the conclusion that he could perform his past work or that he was capable of "medium work" generally.  Given this conclusion, additional vocational expert testimony may be required, and plaintiff's credibility will have to be reconsidered, depending on the conclusions the ALJ's reaches on remand.

        2.      Vocational Expert Testimony

The undersigned agrees with plaintiff that because the Commissioner concedes that the VE's testimony was based solely on the information provided by plaintiff, the Court need not make a determination as to the consistency of the VE's testimony with the DOT.  The undersigned also concludes that substantial evidence does not support the ALJ's finding that plaintiff could perform his past relevant work as a "truck driver" where plaintiff performed the past work by frequently lifting "50 lbs. or more," because that is inconsistent with the ALJ's determination that plaintiff had the residual functional capacity to lift no more than 50 pounds at any time.  The Commissioner does not explain how the ALJ's decision can be supported by substantial evidence where plaintiff's past relevant work required him to frequently lift over 50 pounds and the ALJ determined that the most that plaintiff could lift was no more than 50 pounds, only occasionally.  Thus, this matter should also be remanded for clarification of this issue.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

Report and Recommendation
Cross-Motions for Summary Judgment
*Bubel v. Comm'r*; Case No. 12-10606

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 7, 2013                          s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>March 7, 2013</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>John M. Brissette, William L. Woodard, and the Commissioner of Social Security</u>.

<div style="margin-left: 50%;">

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov

</div>

<div style="text-align: right;">

Report and Recommendation
Cross-Motions for Summary Judgment
*Bubel v. Comm'r*; Case No. 12-10606

</div>